UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-60268-BLOOM

HADASSA ZARFATY,

    Plaintiff,

v.

GARDEN FRESH RESTAURANT CORP.,
*doing business as* Sweet Tomatoes,

    Defendant.
_____/

**ORDER ON PLAINTIFF'S MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT JOHN LEFFLER**

**THIS CAUSE** is before the Court upon Plaintiff's Motion in Limine to Exclude Testimony of Defendant's Expert John Leffler, ECF No. [71] (the "Motion"). The Court has carefully considered the Motion, all opposing and supporting submissions, including Defendant's response, ECF No. [87], and Plaintiff's reply, ECF No. [96], the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

    **I.    BACKGROUND**

This case arises as a result of alleged injuries sustained by Plaintiff at Defendant's Plantation restaurant location. While Plaintiff was a customer at the restaurant, she slipped on a wet patch of floor tile and fell. As a result, Plaintiff asserts claims for negligence (Count 1) and gross negligence (Count 2), for which she seeks compensatory and punitive damages. In the Motion, Plaintiff seeks to exclude a number of opinions of Defendant's expert, John Leffler, who engaged in slip resistance testing of tiles at Defendant's Plantation restaurant where Plaintiff fell.

## II.     LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702 of the Federal Rules of Evidence, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993))). The Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech. DC-8, Inc. v. Hurel Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (internal quotation marks and citations omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to

the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (internal quotation marks and citations omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293, n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

Through this lens, the Court considers the Motion.

### III.   DISCUSSION

Plaintiff seeks to exclude five specific opinions offered by Leffler on the basis that he lacks the requisite qualifications. Those opinions are:

> Opinion 1: The nearly four-year period of time preceding the subject incident had no reported slip and fall incidents, and as such Garden Fresh did not have notice of a critical hazard in either their flooring tiles or their cleaning/maintenance procedures.
>
> Opinion 2: Anti-slip mats are not universally used in restaurant self-service beverage areas, and anti-slip mats can cause stumble and trip hazards.
>
> Opinion 4: Garden Fresh management and training documentation shows a focus on keeping floors clean and dry, and employee testimony reflects the same focus.

> Opinion 5: The restaurant's use of mats inside the front door and near the dishwashers is not evidence of a deficiency in safety.
>
> Opinion 6: The restaurant's requirement for employees to use slip resistant footwear is not evidence of a deficiency in safety.

ECF No. [62-1] at 10-11. Plaintiff also argues that Leffler may not offer opinions regarding the credibility of Plaintiff's experts. The Court considers each argument in turn.

### A. Qualifications for Opinions 2, 4, 5, and 6

Plaintiff first argues that Leffler is a professional engineer and certified forklift operator, and that he has no requisite education, training, background or experience in the restaurant industry. As such, he lacks the credentials to express expert opinions regarding restaurant industry safety, industry or practice issues. In addition, Plaintiff argues that Leffler's Opinion 1 regarding actual or constructive notice of hazards is an impermissible legal conclusion.

An expert in this Circuit may be qualified "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id*. (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, Case No. 08-10052-CIV, 2009 WL 2058384 (S.D. Fla. June 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding

qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[1]

In response to Plaintiff's Motion, Defendant attaches an affidavit from Leffler, in which he explains his qualifications. *See* ECF No. [87-1] ("Affidavit"). Leffler is a forensic mechanical engineer hired by Defendant to provide expert testimony specifically concerning the safety of the floor tile in use at Defendant's Plantation restaurant location in the area of Plaintiff's fall. *Id.* ¶ 1. He has thirteen years of experience as a forensic engineer. He has provided services in over 170 pedestrian fall cases, over 30 of which have involved restaurants. *Id.* ¶ 4. He has been a member of ASTM, a consensus standard development organization accredited by ANSI (the American National Standards Institute), specifically ASTM F13 Pedestrian/Walkway Safety & Footwear Technical Committee, for fourteen years. *Id.* The ASTM F13 Committee develops standards used in performing slip resistance testing, a purpose of which is to determine the safety of walkway surfaces in connection with pedestrian slip and fall accidents, including ASTM F2508, which provides a correlation between tribometers and generally accepted human slip research. *Id.* Leffler is also primary author and technical contact for ASTM F2948 *Standard Guide to Walkway Auditor Qualifications*, a consensus-approved standard addressing topics that walkway investigators should consider in their analyses, including mats, footwear, contaminant management, janitorial process (for floor maintenance), and walkway material condition. *Id.* He is published in peer reviewed journals and presented on pedestrian safety on numerous occasions. *Id.* In addition, he has been the technical contact for ASTM F2508 since 2013. He initiated and authored the Certification section of ASTM F2508 addressing the technical rigor in walkway tribometry, focused at challenging the implied competence of tribometers that have problems with statistical

---

[1] Decisions of the former Fifth Circuit rendered prior to September 30, 1981, are binding decisions in the Eleventh Circuit pursuant to *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

reproducibility. *Id*. Leffler has also taught training course on F2948 for which he created the majority of the course content, including sections on tribometry, mat usage, footwear, and floor care best practices. *Id*.

Upon review, the Court determines that Leffler has significant experience, training, and education in the area of safety of walkway surfaces, including the use of anti-slip mats, floor maintenance process, walkway material condition, and safety of walkway surfaces in cases involving falls at restaurants. As such, Leffler is sufficiently qualified to offer his Opinion 2 and Opinion 5, to the extent that those opinions relate to the use of mats at Defendants Plantation location and specifically in areas of that location that were open to the public. In addition, Leffler is sufficiently qualified to offer his Opinion 4 based on his review of Defendant's management and training documentation.

However, the Court determines that while Leffler may be qualified to testify regarding the use of slip resistant footwear, his Opinion 6 regarding employee use of slip resistant footwear is not relevant. Plaintiff was not an employee, and Defendant has not explained the purpose for which this testimony would be offered, or how it would be relevant to Plaintiff's claim. Therefore, testimony regarding the requirement that employees wear slip resistant footwear would not be helpful to the jury.

### B. Opinion 1 regarding Defendant's notice

Regardless of Leffler's qualifications, he may not offer testimony with respect to Defendant's notice, either actual or constructive. By opining that Defendant did not have notice, Leffler would be telling the jury the specific result it should reach, which is impermissible. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("An expert may not, however, merely tell the jury what result to reach."). Expert witness testimony that suggests the

ultimate result to the jury is not helpful. *Id.* Further, "[a] witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Id.* (citing *United States v. Poschwatta,* 829 F.2d 1477, 1483 (9th Cir. 1987); *United States v. Baskes,* 649 F.2d 471, 479 (7th Cir. 1980)).

### C. Opinions regarding the credibility of Plaintiff's experts

Finally, Plaintiff seeks to exclude testimony by Leffler regarding the credibility of Plaintiff's experts. Specifically, Plaintiff argues that Leffler may not attack the reliability of Mr. Vaghar's English XL tribometer. However, this argument is misplaced, as Leffler's opinion regarding the English XL tribometer is not an opinion on the credibility of Mr. Vaghar. Rather, it is an opinion regarding a tool used to measure slip resistance on floors. Upon review of Leffler's credentials, he is qualified to offer his opinion on the English XL tribometer, as he has significant experience and involvement in the standards applicable to and technical rigor in walkway tribometry. ECF No. [87-1] ¶ 4. Indeed, Plaintiff concedes that Leffler may properly criticize Mr. Vaghar's methodology. Accordingly, Leffler may offer his opinion regarding the methodology used by Plaintiff's experts, including the use of the English XL tribometer.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion, **ECF No. [71]**, is **GRANTED IN PART AND DENIED IN PART**. Leffler may offer his Opinion 2 and Opinion 5, to the extent that those opinions relate to the use of mats at Defendant's Plantation location and specifically in areas of that location that were open to the public. Leffler may offer his Opinion 4 based on his review of Defendant's management and training documentation. Leffler may not offer his Opinion 1 or Opinion 6. In addition, Leffler may properly offer his opinion regarding the use of the English XL tribometer.

7

Case No. 15-cv-60268-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 29, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record